Walter Preston BOGGESS, Jr., Plaintiff and Respondent,

v.

Lawrence MORRIS, Warden, Utah State Prison, Defendant and Appellant.

No. 16894.

Supreme Court of Utah.

July 20, 1981.

David L. Wilkinson, Craig L. Barlow, Salt Lake City, for defendant and appellant.

Douglas E. Wahlquist, Salt Lake City, for plaintiff and respondent.

OAKS, Justice:

The issue in this appeal from the granting of a writ of habeas corpus is whether a convicted felon who has admittedly been denied his constitutional right to appeal his conviction within the time prescribed by law should have his conviction set aside by

collateral attack and be released from custody (subject to the state's right to prosecute him in another trial) or whether there is another, more appropriate, remedy by which he could have a direct appellate review of the alleged errors at his trial.

Defendant Boggess was charged with second-degree murder in the shooting of his wife. After a trial in which he was represented by appointed counsel, a jury convicted him of the lesser included offense of manslaughter, and he was sentenced on June 19, 1978, to one to fifteen years in the Utah State Prison. On January 3, 1979, almost seven months later, defendant filed notice of appeal to this Court (No. 16232), urging error (1) in the court's failure to instruct on the lesser included offense of negligent homicide (as well as manslaughter), (2) in the court's failure to declare a mistrial because of the alleged bias of one of the jurors, and (3) in appointed counsel's ineffective representation at trial by failing to pursue the two foregoing errors by appropriate requests or motions to the court.

Aside from the cryptic claim in defendant's brief that he had "obtained permission to file this appeal by writ of habeas corpus granted December 29, 1978," neither the parties' briefs on appeal nor the record (which contained no mention of a habeas corpus proceeding) disclosed any facts explaining why defendant's appeal was submitted so far out-of-time. The one-month period for appeal in criminal cases (U.C.A., 1953, § 77–39–5) being jurisdictional, this Court dismissed defendant's appeal without addressing the merits of his alleged errors at trial. *State v. Boggess*, Utah, 601 P.2d 927 (1979).

The record in the current appeal (No. 16894) discloses the following uncontested facts developed in a hearing at which defendant and his appointed counsel testified. After his conviction and again at the time of his sentencing, defendant advised his appointed counsel that he did not want to appeal. After he arrived at the state pris-

on, defendant changed his mind and desired an appeal to urge that the jury should have been instructed on the lesser included offense of negligent homicide as well as manslaughter. On July 11, 1978, defendant mailed a letter addressed to his trial counsel in care of the county clerk, asking him to take an appeal. Forwarded by the clerk, this letter reached counsel on July 18th, the day before the time for appeal expired. Counsel testified that he took no action on the letter because he felt that his appointment had terminated with the sentencing because defendant had then advised him that he did not want to take an appeal, and because prior to trial, after full explanation of the alternatives, defendant had approved his pursuing only the manslaughter alternative (defendant denies this), which the jury had accepted.

■ Counsel erred in not filing the notice of appeal in this case. Unless relieved by the court, appointed counsel is responsible to continue his or her representation through appeal if the defendant requests an appeal before the statutory time has expired, unless counsel, after a conscientious examination, finds the appeal to be "wholly frivolous." In that event, counsel must nevertheless pursue the procedure outlined in *Anders v. California*, 386 U.S. 738, 744, 87 S.Ct. 1396, 1400, 18 L.Ed.2d 493 (1966), and followed by this Court in numerous cases.[1]

■ Following a hearing on defendant's petition for a writ of habeas corpus in the District Court for the Third Judicial District, the court ruled in December, 1978, that defendant had been denied his right to appeal and his right to counsel. By stipulation of counsel, the court then entered an order granting defendant permission to file an out-of-time appeal and directing him to return to the district court for further relief if this Court refused to entertain that appeal.

After defendant's appeal was dismissed by this Court, defendant returned to the

---

1. E. g., *Utah v. Menzies*, Utah, 601 P.2d 925 (1979); *Utah v. Cornish*, Utah, 580 P.2d 606 (1978).

district court for relief by habeas corpus. After another hearing solely concerned with the circumstances surrounding defendant's attempted appeal and without any review of the alleged errors at his trial, the court ordered on December 10, 1979, "that if the Utah Supreme Court does not take jurisdiction of the substantive merits of an appeal by petitioner within thirty (30) days of December 6, 1979, petitioner's Petition for a Writ of Habeas Corpus will be granted and petitioner will be released from the custody of the Utah State Prison." This order also noted that if he was released in this manner petitioner could be re-prosecuted under the provisions of U.C.A., 1953, § 76–1–405. Pursuant to the provisions of this order, defendant's conviction was vacated and he was released from custody on January 6, 1980. The state has pursued this appeal (No. 16894) from that order.

Being unable to ignore the manifest denial of defendant's constitutional right to an appeal from his conviction and to the assistance of counsel in that appeal,[2] and having no authority to grant an out-of-time appeal to this Court, the district court had no practical alternative other than to grant the order appealed from.[3] At the same time, the vacating of a criminal conviction not shown to be erroneous and the consequent release of a convicted felon—even subject to re-trial—is a result that cannot be accepted if there is any practical and legal alternative. The ends of justice demand that a convicted defendant have an oppor-

tunity to appeal in timely fashion, but once the appellate process has concluded, society's interest in the effectiveness and integrity of the criminal justice system requires a finality of judgment that should severely limit repetitive appeals and collateral attacks.[4]

The odd result produced by the turn of the habeas corpus merry-go-round in this case is evident from the positions of the parties on this appeal: Defendant argues that this Court has no jurisdiction to grant him an out-of-time appeal to consider his claims of trial error on their merits. He says his release must be affirmed and he must go free unless the state elects to conduct another trial. The state argues that this Court should find a way to grant defendant an out-of-time appeal on the merits, suggesting that we apply the unique California doctrine of "constructive filing" of the notice of appeal in circumstances where the defendant did all that he could to perfect his appeal but the effort fell short of complying with jurisdictional requirements through the fault or inaction of others or through circumstances beyond his control.[5]

We decline to adopt either of these positions. The argument that the courts have no alternative other than to release a defendant in circumstances where an appeal has been denied through the inaction of appointed counsel is particularly unacceptable since it could lend itself to manipulation by defendant and his counsel (although

**2.** E. g., *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967); *Douglas v. California*, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963).

**3.** An alternate order such as the trial court granted in this case has been approved and applied in comparable cases where defendant's rights to an appeal have been denied. E. g., *Dowd v. United States*, 340 U.S. 206, 71 S.Ct. 262, 95 L.Ed. 215 (1951); *Pate v. Holman*, 341 F.2d 764, 777 (5th Cir., 1965); *Patterson v. Medberry*, 290 F.2d 275 (10th Cir., 1961).

In view of the denial of an appeal, the district court might have used its habeas corpus hearing to review the alleged trial errors on the merits and, if it found error, to order defendant released unless a new trial was granted within a prescribed time. But this course of action

would offend the well-settled principle that "a habeas corpus proceeding is not intended as a substitute for an appeal [cite] and will not lie in the absence of a claim of fundamental unfairness in the trial or a substantial and prejudicial denial of a person's constitutional rights." *Morishita v. Morris*, Utah, 621 P.2d 691, 693 (1980); *Gentry v. Smith*, Utah, 600 P.2d 1007 (1979).

**4.** See, e. g., Chief Justice Warren E. Burger, Annual Report to the American Bar Association, Feb. 8, 1981.

**5.** *Re Benoit*, 10 Cal.3d 72, 109 Cal.Rptr. 785, 514 P.2d 97 (1973); *People v. Dailey*, 175 Cal. App.2d 101, 345 P.2d 558 (1959); *People v. Slobodian*, 30 Cal.2d 362, 181 P.2d 868 (1947).

there is no such evidence in this case). Fortunately, there are better alternatives, which further the interests of justice in promoting the full and fair review of criminal convictions on their merits, minimize the use of habeas corpus as a collateral attack upon or as a means of reviewing alleged errors in a criminal conviction, and obviate the expense of holding a new trial where the first trial has not been shown to be unacceptable.

In *State v. Johnson,* Utah, 635 P.2d 36, a companion case, we have held that a claim that a convicted defendant has been denied his constitutional right to an appeal should be presented to the sentencing court by a motion for postconviction relief under Rule 65B(i), U.R.C.P. If the facts found by the district court establish that the right to appeal was denied, that court is then empowered to resentence the defendant *nunc pro tunc* upon the previous finding of guilt so as to afford him an opportunity to prosecute a timely direct appeal from his conviction. That is the appropriate remedy in the common circumstance where, as in the *Johnson* case, defendant's claim is based on allegations that have not been established as facts.

In the unusual circumstances of this case, where the facts have already been established by findings in a habeas corpus proceeding, it would be needlessly circular to require that defendant return to the district court to re-establish the facts by a postconviction hearing and then to be resentenced to qualify for a direct appeal. In this exceptional circumstance, there is a more direct remedy.

Article VIII, Section 4, of the Utah Constitution empowers this Court to issue the writ of certiorari. This constitutional language refers to the writ defined by the common law, not the process limited by various statutory enactments authorizing specialized uses of the writ of certiorari or writ of review.[6] The scope of review by the common-law writ of certiorari was very broad, encompassing not just questions of jurisdiction but also a review of the evidence and the regularity of the proceedings to determine whether the "proceedings were had in accordance with law," and to correct "errors in law affecting the substantial rights of the parties." *Gilbert v. Board of P. and F. Comm'rs,* 11 Utah 378, 389, 396, 40 P. 264 (1895); *House v. Mayo,* 324 U.S. 42, 44–45, 65 S.Ct. 517, 519–520, 89 L.Ed. 739 (1945); *Rex v. Northumberland Compensation Appeal Tribunal,* [1952] 1 K.B. 338, 346, 348.

 Common-law certiorari is a discretionary writ. As this Court observed in *Rohwer v. District Court,* 41 Utah 279, 293, 125 P. 671 (1912): "This Court, in common with all courts having the power to issue writs of certiorari, may exercise a reasonable discretion in granting or refusing a writ." That discretion must be used sparingly so as not to undermine legislative authorizations fixing limits on the time and manner of appellate review. At the same time, certiorari is available in aid of an appellate court's supervision of the actions of inferior courts, especially in implementing the process of appellate review. As the United States Supreme Court declared in *McClellan v. Carland,* 217 U.S. 268, 279, 30 S.Ct. 501, 503, 54 L.Ed. 762 (1910):

> While the power to grant this writ [of certiorari] will be sparingly used, as has been frequently declared by this court, we should be slow to reach a conclusion which would deprive the court of the power to issue the writ in proper cases to review the action of the Federal courts inferior in jurisdiction to this court.

This Court applied that principle in *Higgins v. Burton,* 64 Utah 550, 553, 232 P. 917 (1924), where it allowed a writ of certiorari at the request of the district attorney to review an order quashing an information because the lower court's order was not

---

**6.** E. g., U.C.A., 1953, §§ 35–1–86 (workmen's compensation awards), 54–7–16 (public service commission orders); Utah Revised Statutes, 1933, § 104–67–8, applied in *Chesney v. District Court,* 99 Utah 513, 108 P.2d 514 (1941); Utah Compiled Laws, 1917, § 7377, applied in *Hilton Bros. Motor Co. v. District Court,* 82 Utah 372, 25 P.2d 595 (1933); *Hallowell v. District Court,* 82 Utah 561, 26 P.2d 543 (1933).

subject to appellate review by any other means.

At common law, the writ of certiorari was often used in company with the writ of habeas corpus to permit a higher court to review the proceedings of an inferior tribunal.[7] Together, it was sometimes said, they could be used for the same purpose as a writ of error to review the proceedings of a court over which the issuing court had appellate jurisdiction.[8]

In this case, we have a criminal conviction that is no longer subject to review by the statutory remedy of appeal and a habeas corpus proceeding—properly before this Court on appeal—which has shown that the conviction cannot stand without granting the defendant his constitutional right to an appeal. In that circumstance, where this Court has appellate jurisdiction over the habeas corpus proceeding and original jurisdiction to issue the writ of certiorari for the record in the criminal conviction, the effect of the two writs can unite to open the door for direct review of a criminal conviction in this Court.

If available as an alternate means of appellate review, these two writs could make a mockery of the time limits for appeal, undermine the finality of criminal judgments, and promote the indefensible merry-go-round of collateral attack. That must not be. We stress that this is not a case where the alleged error could have been corrected on appeal.[9] The error in this case goes to the availability of the appeal. Nor is this a case where the time for appeal had passed before defendant took the initiative to seek an appeal, so that an out-of-time review would constitute an evasion of the statutory period for appeal.

In the extraordinary circumstances of this case, where a timely appeal to this Court was prevented by circumstances that admittedly constituted a denial of defendant's constitutional rights to appeal, we exercise our discretion to issue the common-law writ of certiorari to bring up the record and allow defendant a direct review in this Court of the alleged errors in his trial for manslaughter, on the merits, just as if he had taken an appeal within the statutory period. The briefs filed by the parties in No. 16232 are hereby received as the briefs in this case, with either party to have leave to supplement them within thirty days.

For the reasons set out above, we also vacate the order of the district court granting defendant a writ of habeas corpus, releasing him from custody and vacating his conviction, and remand this habeas corpus case to the district court for further action consistent with this opinion.

HALL, C. J., and STEWART and HOWE, JJ., concur.

MAUGHAN, J., heard the arguments, but died before the opinion was filed.

---

7. See generally, D. Oaks, *The Original Writ of Habeas Corpus in the Supreme Court*, 1962 Sup.Ct.Rev. 153, 182–89; D. Oaks, *Habeas Corpus in the States—1776–1865*, 32 U.Chi.L.Rev. 243, 259–60 (1965). As a means of review, the two writs were complementary. Habeas corpus produced the presence of the prisoner but not the record; certiorari produced the record but not the prisoner. 2 Hale, Pleas of the Crown 210 (Am.ed. 1847).

8. *Wales v. Whitney*, 114 U.S. 564, 571, 5 S.Ct. 1050, 1053, 29 L.Ed. 277 (1885).

9. Compare, e. g., *Hafen v. Morris*, Utah, 632 P.2d 875 (1981).